*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALEH ABDULLA AL-OSHAN, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Civil Action No. 05-0520 (RMU) |
| NASSER MAZYAD AL-SUBAIY, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Civil Action No. 05-CV-1453 (RMU) |
| ABDULSALAM ALI ABDULRAMAN AL-HELA, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Civil Action No. 05-CV-1048 (RMU) |
| SAEED MOHAMMED SALEH HATIM, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Civil Action No. 05-CV-1429 (RMU) |

1

| | |
|---|---|
| SALIM MOHAMMED ADAM BIN AMIR, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Civil Action No. 05-CV-1724 (RMU) |

**PETITIONERS' MOTION TO COMPEL INFORMATION
RELATED TO MEDICAL TREATMENT**

This motion arises out of the growing hunger strike at the United States military prison in Guantánamo Bay, Cuba ("Guantánamo"). Petitioners in the above-referenced actions, by their undersigned attorneys, respectfully request the Court compel Respondents to provide counsel for Petitioners immediate access to their clients, and information regarding Petitioners' health and status. In support of their application, Petitioners rely upon the following:

1. Petitioners are citizens of Sudan, Saudi Arabia and Yemen. Since late 2001 or early 2002, Petitioners have been in the custody of the United States military and held, virtually *incommunicado*, at Guantánamo.

2. In the past year, Petitioners, by their Next Friends, filed petitions for writs of *habeas corpus*, alleging that their detention is in violation of the Constitution, laws and treaties of the United States.

3. For well over a month, more than 200 individuals held at Guantánamo have protested both the plethora of abuses perpetrated by Respondents against them, including recent physical beatings, as well as their ongoing detention without charge, by engaging in an open-ended refusal of both food and water.

2

4.  Emerging details related to the hunger strike provided to Guantánamo *habeas* counsel by their clients, including participants' openly-stated expectation of death, demonstrate that the current situation represents an unprecedented and urgent crisis, with an unconfirmed number of detainees now hospitalized with their health in grave danger.

5.  Rather than acknowledging the crisis and undertaking efforts to provide counsel, Next Friends or family with basic information regarding the health and safety of Petitioners, Respondents have instead claimed to the Court – as recently as two weeks ago, in *Al Odah v. United States*, No. 02-0828 (CKK) – that *habeas* counsel's reports regarding the hunger strike were merely "rumor." Faced with numerous media reports and incontrovertible evidence surrounding the crisis, however, Respondents were forced to concede publicly the existence of the hunger strike. *See, e.g.*, Charlie Savage, *89 Prisoners Resume Hunger Strike at Guantánamo*, Boston Globe (Aug. 26, 2005) (containing statements by Army Colonel Brad Blackner confirming that "detainees began fasting to protest their continued detention" on August 8, 2005), attached as Exh. A.

6.  Respondents also admit that, as a result of the deteroriating condition of numerous individuals, the Government has subjected at least some detainees to forced feeding. *See, e.g.*, Mike Mount, *Hunger Strike at Guantánamo Grows*, CNN.com (Sept. 13, 2005) (containing statements of Pentagon officials regarding force feeding), attached as Exh. B. In light of these reports, over the course of the past week, counsel for Petitioners in the above-referenced actions have requested information from the Government related to the health and hospitaliziation of their clients. In response to such requests, counsel for Respondents have refused to provide any client-specific

3

information, claiming instead that the Respondents are "not in a position" to provide updates on whether Petitioners are participating in the hunger strike or in a hospital.

7. As set forth in the accompanying affidavits, counsel for Petitioners have either confirmed, or have substantial reason to believe, that their clients are participants in the mass hunger strike. As a result, Petitioners' lives are potentially in grave jeopardy and, despite exceedingly tailored requests by counsel for specific information related to their clients' hospitalization or participation in the hunger strike, Respondents have responded with a blanket refusal to provide any such information or access to Petitioners.

8. The Government's response to the current crisis has been wholly inadequate and in violation of accepted American and international standards for treatment of prisoners who elect to participate in a hunger strike. *See, e.g., World Medical Declaration on Hunger Strikers* (Sept. 1992); *American Correctional Health Services Position Statement on Hunger Strikes* (Aug. 1994), attached as Exhs. C, D, respectively.

9. Thus, in light of the urgent nature of the issues presented by this application, Petitioners request that the Court grant the following relief:

   a) Immediate access to Guantánamo by representative counsel to visit with and to ensure that they are receiving adequate medical treatment;

   b) Immediate telephonic access between counsel and clients;

   c) Telephonic access between counsel, Next Friends, family members and clients;

   d) Access by counsel to records indicating Petitioners' medical treatment, meal schedules, punishment and hospitalization; and

4

  e) Respondents' policies and actions taken with respect to the current and previous hunger strikes.

  10. As publicly conceded by the Government and well-documented in the public record, the detainees at Guantánamo have endured numerous abuses at the direction of United States officers and agents, including torture and interrogation practices which violate both American and international rules governing such conduct.

  11. *Habeas* counsel have received information from clients detailing such abuses, which have included denial of food and water, physical beatings, sexual humiliation, religious violations and prolonged psychological distress.

  12. These abuses have had a profound effect on the mental, physical and emotional state of Petitioners.

  13. On or around August 25, 2005, counsel for Petitioners learned that, as of some two weeks earlier, the second of two recent hunger strikes had commenced at Guantánamo due to detainee complaints that (1) military authorities had failed to meet the obligations agreed to in an agreement between detainees and Respondents that had ended a prior hunger strike just two months ago; (2) detainees continue to be subject to physical, psychological and religious abuses; and (3) detainees continue to be held without charge or adequate process. *See, e.g.,* Declaration of Julia Tarver at ¶ 5 ("Tarver Aff."), attached as Exh. E.

  14. According to recent news reports, Respondents have indicated that the strike involves approximately 131 individuals. *See Hunger Strike Grows in Guantánamo,* Chi. Sun-Times (Sept. 16, 2005), attached as Exh. F. *Habeas* counsel who have visited the base in recent weeks, however, report that at least 200 individuals are participating in the hunger strike. In support of this statement, counsel has annexed the

unclassified statement of detainee and *habeas* petitioner Binyam Mohammed, who reports that the renewed hunger strike involves 210 detainees. *See* Statement of Binyam Mohammed (Aug. 11, 2005), attached as Exh. G (provided by counsel for Mohammed).

15. The number of participants in the hunger strike has continued to grow on a daily basis. *See* Carol D. Leonnig, *More Join Guantánamo Strike*, Wash. Post (Sept. 13, 2005), attached as Exh. H. In fact, almost forty detainees had joined the strike since last Friday, according to statements made by military officials on September 13, 2005, *see id.*, and an additional eleven detainees have been officially reported as having joined in the past two days. *See* Exh. F.

16. As time progresses, the health of detainee participants has drastically deteroriated. *Habeas* counsel and news media have reported that, as a result of the strike, twenty-one detainees are currently hospitalized. *See* Exh. F.

17. Furthermore, Respondents have conceded that, as of September 16, 2005, 20 individuals are being forcibly subject to involuntary medical intervention via the introduction of intravenous fluids or nasoenteric (nasal) tube feeding. *See* Exh. F.

18. As set forth in the accompanying affidavits, counsel for Petitioners have substantial reason to believe that many, if not all, of their clients are participants in the current strike.

19. For example, several Petitioners were participants in the early June/July hunger strike, a fact confirmed by counsel who visited with Petitioners during that time. *See, e.g.,* Tarver Decl. at ¶ 5; Declaration of David H. Remes at ¶ 4-5 ("Remes Decl."), attached as Exh. I.

6

20.     For example, during the course of the first hunger strike, Petitioner Abdulmalik Adbulwahab, who refused food for 12-13 days, passed out several times, urinated blood and was forcibly injected with intraveneous fluids. *See* Remes Decl. at ¶ 5.

21.     Also during a visit in July 2005, counsel for the *Al-Oshan* and *Al–Subaiy* Petitioners learned that one client had persisted for so long in the hunger strike that he was hospitalized for several days and fed intraveneously, during which time he was unconscious for at least four days. *See* Tarver Decl. at ¶¶ 7-8.

22.     Upon his awakening, our client, who has been detained since he was a juvenile, was repeatedly visited by individuals purporting to be military officials. Tarver Decl. at ¶ 9. These individuals assured our client that his release had been approved by the Government and would take place in approximately three weeks' time. *Id.* In light of these assurances, the petitioner agreed to end his strike. *Id.* at ¶ 10.

23.     As more than six weeks have past since the Government made these assurances – and Respondents have not yet filed advance notice of any petitioner's release or transfer, as required – it is clear that the Government has reneged on the promise made to our young client. *See* Tarver Decl. at ¶¶12-13.

24.     Counsel for Petitioners, and others, have every reason to believe that their clients are once again participating in the hunger strike, given Respondents' blatant failure to keep the promises they made in order to end the previous strike.

25.     Further, from recent meetings with Petitioner Al-Hela, counsel believes that he is participating in the current hunger strike, which is widespread. *See* Remes Decl. at ¶ 6.

7

26. Counsel make this application for emergency relief because there are no other viable options for gaining access to Petitioners in the timely fashion required under the exigent circumstances. *See* Declaration of Gitanjali S. Gutierrez, at ¶¶ 4-6 ("Gutierrez Decl."), attached as Exh. J.

27. Counsel have requested information related to Petitioners' health and hospitalization, but Respondents have refused to provide any such client-specific information. *See, e.g.,* Exh. K.

28. On September 2, 2005, for example, counsel for the *Al-Oshan* and *Al-Subaiy* Petitioners requested information about whether any clients had been hospitalized or "in serious need of medical attention." *See* Exh. K. Additionally, counsel requested telephone access to Petitioners to ensure that they were receiving adequate medical attention. *Id.*

29. Despite repeated requests for a timely response, counsel for Respondents did not provide an answer until seven days later, on September 9, 2005. *See* Exh. K.

30. In their response, the Government refused to provide telephone access or any information about Petitioners, stating that "GTMO is not in a position to provide continuous updates" with respect to whether a Petitioner is hospitalized or refusing meals. *See* Exh. K.

31. The Government's response, identical to those received in response to similar requests made by *Al-Hela* counsel, made clear its application to "the more than 200 other habeas petitioners at GTMO." *See* Exh. K; Remes Decl. at ¶ 8.

32. Thus, Respondents have effectively stated that they will not, as a blanket policy, provide any client-specific information related to a detainee's refusal to accept food and water or hospitalization resulting from the hunger strike.

33. Thus, without outside of intervention by the Court, counsel has no effective means of accessing Petitioners or ascertaining information about their health.

34. As the Court is likely well aware:

- Visits to Guantánamo require extensive planning and coordination, including security clearance and approvals from the Departments of Justice and Defense, normally at least a month in advance. Extremely limited commercial flights are available for the base.[1] As a result, and given the expenses involved, counsel may only arrange only periodic trips, well in advance, with the Government's approval.

- The Government generally prohibits counsel from communicating with clients via telephone or fax, although the Protective Order, by its terms, permits telephonic access in certain circumstances.

- Delays in attorney-client mail are egergious, with letters often taking well over six weeks to reach clients or counsel.

- Petitioners are regularly denied access to pens or paper for letters to counsel.

- Moreover, Petitioners' compromised health will likely limit their capacity to effectively reach out to counsel for assistance.

- Next friend family members rely almost exclusively upon habeas counsel for timely information about their imprisoned relatives.

35. As a result of Respondents' refusal to provide the requested access and information, and the exigent circumstances presented by the current crisis, counsel for Petitioners come before the Court to request this limited emergency relief.

---

[1] In fact, on certain days of the week, there are no commercial flights to or from Guantánamo, and even when flights are available, space is limited, as the largest aircraft can only hold approximately 15 passengers at a time.

9

36. *First,* understanding the logistical burden upon both the Government and counsel to arrange for a visit on such short notice, Petitioners request that representative counsel be granted immediate access to Guantánamo, for the purpose of assessing the medical treatment and condition of all Petitioners.[2]

37. *Second,* counsel for Petitioners request immediate telephone access to their clients to determine their health and well-being, as well as whether they require counsel to take continued legal action to protect their rights.

38. *Third,* Petitioners request telephone access with their Next Friends or family members. Family members may be able to communicate more effectively with Petitioners, who are in a compromised and debilitated medical state.[3]

39. *Fourth,* counsel for Petitioners request access to records regarding Petitioners' medical treatment, meal schedules, punishment and hospitalization, as well as Respondents' policies and actions taken with respect to the current and previous hunger strikes.

40. Counsel for Petitioners also respectfully request a conference before the Court to discuss the issues presented by the within motion.

---

[2] Such a visit was recently arranged by Respondents in *Al Odah v. United States,* No. 02-0828 (CKK) (in light of hunger strike motion, for emergency access to clients filed).

[3] Furthermore, failure to provide families with notice of a detainees' participation in a hunger strike violates World Medical Association (WMA) Guidelines for the Management of Hunger Strikers. *See* Exh. C. *See also* Exh. D.

10

WHEREFORE, for the above-stated reasons and for any other reason that may become known to the Court, Petitioners respectfully request the Court grant the above requested relief.

Dated: New York, New York
       September 16, 2005

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:
         /s/
_____
Julia Tarver (NY0029)
Jennifer Ching
Andrea J. Prasow

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Counsel for Petitioners Al Joudi et al.*

**COVINGTON & BURLING**
David H. Remes
D.C. Bar No. 370782
1201 Pennsylvania Ave. NW
Washington, DC 20004
(202) 662-5212

Marc D. Falkoff
D.C. Bar. No. 491149
1330 Avenue of the Americas
New York, NY 10019
(212) 841-1166

*Counsel for Petitioners Al-Hela, et al.
and Hatim, et al.*

**DEBEVOISE & PLIMPTON LLP**
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar. No. 480763)
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
(202) 383-8000

11

Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Hadassa Waxman
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Of Counsel*
**CENTER FOR CONSTITUTIONAL RIGHTS**
Barbara Olshansky
Gitanjali Gutierrez
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6439

*Counsel for Petitioners Bin Amir et al.*